SMITH (PETER v.). See Case No. 11,020.

SMITH (PHARO v.). See Cases Nos. 11,062 and 11,063.

SMITH v. PLYMPTON. See Case No. 13,078.

———

## Case No. 13,092.

### SMITH et al. v. POMEROY.

[2 Dill. 414;[1] 5 Chi. Leg. News, 158.]

Circuit Court, D. Minnesota. Dec. Term, 1872.

PARTIES — ABSENT DEFENDANTS — PUBLICATION—
JURISDICTION—TITLES UNDER DECREES.

1. Decrees and judgments of courts of general jurisdiction are presumptively regular.

2. If the court pronouncing a decree had jurisdiction to render it, such decree can not be collaterally impeached.

[Cited in brief in Adams v. Cowles, 95 Mo. 501, 8 S. W. 711.]

3. What is requisite to confer jurisdiction over the property of absent mortgagors in bills to foreclose, considered, and the statute of the territory of Minnesota on that subject, construed.

4. Titles acquired under sales upon decrees of foreclosure, where the court rendering the decree had jurisdiction, can not be collaterally impeached for errors or irregularities in the proceedings in the cause in which the decree was rendered.

This was an action of ejectment tried to a jury. It was one of numerous cases brought to test the title to the property in "Lambert & Co.'s addition" to St. Paul.

E. C. Palmer and Officer & Chittenden, for plaintiffs.

Gilfillan & Williams, H. J. Horn, Geo. L. Otis, and M. Lamprey, for defendant.

Before DILLON, Circuit Judge, and NELSON, District Judge.

DILLON, Circuit Judge. This is an action of ejectment for lots 1, 2, and 3, in block 1, in Lambert & Co.'s addition to St. Paul. Both parties claim title under Charles K. Smith, who died intestate on the 28th day of September, 1866. The plaintiffs have been admitted on the trial to be his heirs at law, and upon the documentary evidence introduced are entitled to recover unless the title of their ancestor has been divested by the foreclosure proceedings of one Vetal Guerin against the said Charles K. Smith, set up in the answer. It is under these proceedings that the defendant claims title to the lots in controversy; and the question in the case is whether the right of the said Smith was foreclosed by a valid decree, and the title

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

22 FED. CAS.—40

to the premises vested in the purchaser by a valid sale under such decree.

Record evidence has been introduced, showing that on the 25th day of February, 1851, Vetal Guerin, being the owner of ten acres of land, now in the city of St. Paul, and since platted under the name of "Lambert & Co.'s Addition" to the city, conveyed the same to Charles K. Smith, above named (the ancestor of the plaintiffs), and that Charles K. Smith on the same day executed a mortgage to Guerin, dated February 25th, 1851, to secure the sum of $200, due May 12th, 1851, which mortgage was duly recorded.

It is this mortgage which the defendant avers was subsequently foreclosed, and under which, it is claimed, the mortgaged property was sold by virtue of the foreclosure decree. These foreclosure proceedings are asserted to have taken place in the district court of the territory of Minnesota, for the county of Ramsey, in which the land in controversy is situate; and to show the fact of the foreclosure the defendant has introduced certain record evidence of proceedings in that court in 1851 and 1852 in a suit entitled Guerin v. Smith [unreported], and certain oral evidence to show the loss of other portions of the records in said cause, and a deed purporting to have been made by a master under the decree rendered therein.

By the statute then in force that court was a court of general chancery jurisdiction. Rev. St. Minn. 1851, c. 94. This statute prescribed in detail the mode of exercising chancery jurisdiction generally, and contained special provisions respecting the "powers and proceedings of the court of chancery touching the foreclosure of mortgages."

It prescribed, among other things, the mode of proceeding against absent defendants, in substance that "In case of a bill filed against any defendant, against whom a subpoena or process to appear shall issue, who shall fail to enter his appearance, and it shall be made to appear, by affidavit or otherwise, to the satisfaction of the judge, that the defendant is out of the territory, the judge may by order direct such defendant to appear, plead, answer, or demur to the bill at a day to be fixed, not less than three nor more than six months from the date of the order, which order may be published in a newspaper for six weeks; and in case the defendant shall fail to appear and plead within the time limited, on proof of the publication of the order to the satisfaction of the judge, the judge may order the bill to be taken as confessed, and render a decree as therein provided." Rev. St. 1861, p. 463, § 15; Id. p. 468, § 57.

The statute then in force contained this provision: "The clerk must keep among the records of the court a register of actions; he must enter therein the title of the action, with brief notes under it, from time to time, of all papers filed, and proceedings had therein." Rev. St. 1861, p. 421, § 40.

It also contained a provision that "It shall not be necessary to enroll any decree in a court of chancery, but immediately after any decree shall have been pronounced, the bill, answer, and all other proceedings in the cause shall be attached together by the clerk and filed in his office," &c. Rev. St. 1861, p. 465, § 32.

On this trial the original book called the "Register of Actions" has been introduced in evidence, and in relation to the suit of Guerin v. Smith, contains entries showing that the bill of foreclosure was filed November 8th, 1851; that two subpœnas were returned by the sheriff that Charles K. Smith was not found, the one November 15th, 1851, the other December 15th, 1851; that an affidavit for an order for publication was filed as follows: Ordered that "Charles K. Smith appear, plead, answer, or demur to the complainant's bill filed in this cause by the 1st day of April next," and that "this order be published in the Minnesotian six weeks successively, at least once each week. Dated, St. Paul, December 22d, 1851. Jerome Fuller, Chief Justice." It has been proved by the production of the original files of the Minnesotian from the state historical society that this order was published for the required length of time.

The register of actions also contains the entry of an order of the chief justice, filed April 3d, 1852, that the bill be taken as confessed, and an order of reference by the clerk as master; that the master made his report, which was filed May 10th, 1852, finding the sum of $213.92 due the complainant. It also contains the following entries: "Decree filed May 20th, 1852; report of sale filed August 10th, 1852; final decree confirming sale and ordering distribution of surplus filed September 3d, 1852."

The clerk and deputy clerk who made the entries in this register are both alive and have been examined as witnesses before you on this trial, and testify that after thorough search they cannot find the original files or papers in this foreclosure suit; that the orders and decrees of the court were never entered of record in any book, but were filed away at the time as the statute directs.

The clerk has testified that he recollects that the bill in the said suit was to foreclose the mortgage from Smith to Guerin, before mentioned; and that he knew a decree of foreclosure was rendered and signed ordering a sale of the mortgaged premises by the clerk as master; that Lambert was the purchaser; that the sale was reported, and that an order was made and signed by the judge confirming the sale. A deed by the master to Lambert, dated August 10th, 1852, reciting the decree and sale and conveying the property, is also in evidence.

Now, if you believe from the evidence that the bill in the said suit of Guerin v. Smith was one to foreclose the said mortgage of February 25th, 1851, embracing the lots in controversy; that an order for publication was directed by the chief justice of the court; that the order appearing in the files of the Minnesotian was published for six weeks, respecting which last fact there is, indeed, no controversy; that subsequently a decree of foreclosure was rendered by the judge ordering a sale of the mortgaged premises by the clerk as master; that the clerk sold the premises, though he failed to publish notice of said sale in more than one newspaper; and that the sale was reported to the court and a final decree ordered, confirming the sale and ordering a distribution of the surplus; and that the master made the deed of August 10th, 1852, introduced in evidence,—then we instruct you that the effect of this foreclosure proceeding, sale, and deed was to divest the said Charles K. Smith of title to the mortgaged premises, and consequently the plaintiff, as his heir-at-law, cannot recover in this action.

The court in which these proceedings were had was a court of original and general jurisdiction in chancery, and if it rendered a decree of foreclosure of the said mortgage the presumption is both that it had jurisdiction to render such a decree, and that its proceedings were regular.

The presumption of jurisdiction arising from the fact that a decree was rendered is not conclusive, but may be rebutted; and if it appears that it had no jurisdiction of the subject matter or the party defendant, its decree and all acts under it would be void.

Where a decree of foreclosure is rendered, and a sale of property has been made thereunder, it can not be attacked collaterally, and the title thus acquired overthrown, except on the ground that the court rendering the decree had no jurisdiction. If it had jurisdiction, no irregularity and no error in the exercise of such jurisdiction can affect the title of a purchaser under the decree, even though the error or irregularity may be such that a revisory court on appeal would have reversed the decree.

The district court of the territory of Minnesota confessedly had jurisdiction of suits to foreclose mortgages upon lands within the county where the court was being held.

What would confer jurisdiction upon the court to render a decree of foreclosure? Under the statute in force at the time, and before referred to (Rev. St. 1851, c. 94), we answer this question as follows:—

First. There must be filed in the court a bill of complaint, describing the mortgage sought to be foreclosed, the mortgaged premises, and making the mortgagor a defendant. This is necessary to call the judicial power into exercise.

Second. A subpœna or process must issue against the defendant, and be served upon him; or, if he was out of the territory or could not be found therein, the judge must make an order requiring the absent defendant to appear therein, which order must be

served personally on the defendant, or be published in one or more newspapers in the territory, as required by statute, and the order of the judge (Rev. St. 1861, p. 453, § 14), but if such personal service or publication be made, and proof thereof be made to the proper judge or court, such court or judge has jurisdiction to render a decree thereon.

The court, or under this statute the judge, was authorized to determine whether the service or publication had been made, and its sufficiency and such determination, though erroneous, can not be revised in a collateral proceeding by another court, but such determination must stand and be respected until it is reversed or set aside in some direct proceeding.

A distinction must be borne in mind between a case where there is no service or no publication, and one which is defective, but which the proper court has adjudged to be sufficient, and upon such an adjudication rendered a final decree in the case.

These principles, so essential to the stability of judicial titles, have had the sanction of the supreme court of the United States, and have been vindicated and enforced with great clearness and strength of reasoning in several of its published judgments. Voorhees v. Bank, 10 Pet. [35 U. S.] 449, and cases cited; Cooper v. Reynolds, 10 Wall. [77 U. S.] 308.

Views not in harmony with these have, we are aware, been sometimes held; but their undoubted effect is to encourage the picking of flaws in deeds and judicial proceedings in which confidence has been long reposed, thereby promoting litigation and precipitating upon the community all of the manifold evils of insecure titles. It is, in our judgment, a misfortune to any state where these views receive judicial sanction, and especially in the new states where property is rapidly advancing in value, as exemplified by the case in hand, in which ten acres of unimproved land, worth in 1852 about $700, is soon after platted into lots, which are now covered with valuable improvements, made by purchasers in good faith, and worth fifty or perhaps an hundred times that amount.

There was a verdict and judgment for the defendant.

As to jurisdiction and collateral attacks on decrees and judgments, see Salisbury v. Sands [Case No. 12,251]; Isaacs v. Price [Id. 7,097].